SHARP'S EX'R
vs.
DUNAVAN.

Wherefore, the judgment is affirmed.

---

17m223
99 525

## Sharp's Executor *vs.* Dunavan.          Case 24.

### APPEAL FROM CHRISTIAN CIRCUIT.          ORD. PET.

1. Where a town is extended by improvement, so as to give those liv-
ing adjacent to the town boundary all the advantages which the
citizens enjoy from the local government of the town, the legisla-
ture have constitutionally the power to extend the limits of the
town, and subject the owners of the property to a share of the
burdens of the local government.
2. Whether, upon the existence of a particular state of fact, the legis-
lature is authorized to extend the town limits, is a question of law
for the decision of the court rather than of a jury. The propriety
of the extension, nor the motive, can be submitted to the jury.
3. The decision of the legislature as to the propriety of the extension
of town limits is to prevail, unless there has been a flagrant vio-
lation of a private right.

[The facts of the case are stated in the opinion of
the court.—REP.]

*R. McKee* for appellants—

1. The facts argued in the case of *Cheyney vs. Hoo-
zer*, 9 *B. Monroe*, 330, are materially different from
the facts in this case. In that case, and that of *Glass
vs. Sanders*, the question of legislative power receiv-
ed an elaborate discussion at the bar orally, as well
as by written brief of counsel. It will not be neces-
sary to do more than refer to those briefs.

2. The act of 1846, extending the limits of the
town, was passed on the petition of a majority of
the citizens of the old town, including the trustees, and
some persons residing in the proposed extension.

The old town embraced 138 acres, with a population of 1,600. The extension includes 212 acres more, making 350 acres. Twenty-two to twenty-four families were included in the addition. In 1848 the old and new limits contained a population of 1792. The taxable property in 1847 in the old limits was $338,780—in the addition $103,000. The plaintiff was a practicing lawyer, residing near enough to enjoy the benefits of the schools, churches, &c., of the town, with an office within the original limits. He owned and resided on a tract of 140 acres, which was used and occupied as a family residence, and for agricultural purposes exclusively. Thirty-four acres of the 140, is embraced by the extension; and this thirty-four acres is that upon which taxes have been assessed. The plaintiff's house is twenty-five poles from the boundary of the old town, and one hundred and fifty-five poles, as measured, from the center of the business part of the old town. The plaintiff and his family were the only persons residing upon the thirty-four acres, except an old blind free negro and his wife, who occupied a small piece of ground free of rent.

Upon the facts proved, the court peremptorily instructed the jury to find for the defendant, and refused plaintiff's instructions. The action of the court in giving and refusing instructions is complained of.

1. The thirty-four acres of land included in the addition, was part of 140 acres occupied and used exclusively for agricultural purposes. It was not necessary to the town for any legitimate purpose— not even its convenience. One object seems to have been to make the boundary of the town a square, which is not a legitimate purpose.

2. It is insisted by appellee, that the subsequent laying out a portion of the land embraced by the act, which belongs to appellant, into lots, is in legal contemplation an assent to the extension of the town limits. This presumption cannot be indulged, when

there is positive proof of dissent.   The propriety and legality of the extension must rest upon and be decided by the facts existing at its date, and whether it was proper to  bring the property into the town limits to be taxed for public use.

3.  The case of *Chcyncy vs. Hoozer* was decisive of that case, but not of this.   The rights of each individual affected by the enactment depend upon the facts of each case.

4.  But it is insisted that the act of 1846, of which we complain, is repealed by the act of 1847.

It is said (*Williamson vs. Commonwealth*, 4 *B. Monroe,*) that a general charter repeals all former laws in reference to the same town.  In March, 1847, (*Session Acts*, 337,) it was enacted that the provisions of an act entitled "an act to incorporate the town of Shelbyville, and for other purposes, approved February 21, 1846, be and the same are hereby applied to the town of Hopkinsville, in Christian county, as fully and to the same extent as if the different sections of said act were here repeated and incorporated, and that all acts heretofore passed in reference to said town which may in anywise conflict with the provisions of this act, be and the same are hereby repealed."   The act incorporating Shelbyville will be found in *Session Acts*, 255.   The first section, with Hopkinsville substituted for Shelbyville, and Christian for Shelby county, or so much as is material, will read thus : "That the town of Hopkinsville, as laid off and described in a plat, and the additions thereto, now of record in the clerk's office of the Christian county court, shall be known and is hereby declared to be *the extent* and limits of said town." The act extending the limits of Hopkinsville was passed February 4, 1846.   The general charter, the first section of which so far as it defines boundary, was passed 1st March, 1847.   In this section the legislature, instead of leaving the question to judicial construction, have declared that all "acts heretofore passed in reference to said town, which in anywise

SHARP'S EX'R
vs.
DUNAVAN.

conflict with the provisions of this act, (meaning the act of incorporation,) are repealed." There was no proof that the property sought to be taxed was "within the limits of the plat of record in the clerk's office, and in addition thereto, *of record* in the clerk's office of the Christian county court." Nor could such proof have been adduced, as it did not exist. The act of 1846, and that of 1847, are in conflict, and the latter repeals the former.

*J. Harlan* for appellee—

F. C. Sharp, in his lifetime, sued Dunavan, in replevin, for taking a horse. Dunavan avowed the taking, and justified as marshal of the town of Hopkinsville. Plaintiff plead to the avowry, alledging he had paid all the taxes which had been levied upon his property by the trustees of Hopkinsville for the years 1849 and 1850. The defendant replied, traversing the averments of the plea, and tendered an issue to the country, which was joined by the plaintiff.

Trial—verdict and judgment for defendant. Plaintiff took a bill of exceptions, and has appealed to this court.

It is apparent from the whole record that the object of the plaintiff was to present the question whether the act of 1846, page 122, extending the limits of the town of Hopkinsville, (*Session Acts,* 1845-6,) was constitutional.

I regard this question as settled in the cases of *Cheyney vs. Hoozer,* (9 *B Monroe,* 330,) and *Hoozer vs. Buckner,* and three similar cases, (11 *B. Monroe,* 183,) and decline to re-argue the question before this court.

The *power* of the general assembly to pass laws extending the limits of towns cannot be seriously questioned at this day, and the facts stated in the bill of exceptions show that Mr. Sharp had no just grounds of complaint. He seemed to desire to have all the beenefits from the town government, and let

other people pay the expenses thereof. It seems that the largest portion of the ground embraced in the extension has been laid off into lots, and improvements made thereon. It seems that Mr. Sharp looked upon Hopkinsville as a "finished town," but a majority of its inhabitants entertaining different views were anxious to extend its limits.

From my reading of the record, there is no plausible ground to reverse the judgment. This opinion is expressed without seeing either an assignment of errors or a brief on the side of appellants. The only issue made by the pleadings is, whether the whole of the taxes for 1849 and 1850 had been paid by Mr. Sharp, and the proof negatived that proposition.

Chief Justice MARSHALL delivered the opinion of the court: July 2.

A portion of the land of F. C. Sharp, viz., about 34 out of about 140 acres, having been included within the extended boundary of the town of Hopkinsville as defined by an act of 1846, brought under the consideration of this court in the case of *Cheyney vs. Hoozer*, 9 *B. Monroe*, 330, Sharp refused to pay the tax assessed by the town upon his property included within the extended boundary, and brought this action of replevin against Dunavan, the officer of the town, who had seized his horse as a means of coercing the tax. During the pendency of the suit Sharp died, and the action was revived in the name of his executors. The only question seriously contested in the case, was whether the act of 1846, extending the limits of the town, was, as to Sharp and his land, constitutional; the ultimate question being whether the property of Sharp thus brought into the town, or made a part of it by the extension of the limits, without his consent, was thereby subjected, or could be constitutionally subjected, to taxation by the municipal authorities of the town.

In the case above referred to, (9 *B. Monroe*, 330,) the court assumed, upon the evidence in that case, that a comparatively dense population, including

Cheyney, the complaining party, had located itself on one side of the former town, outside of, and adjoining it, with the probable purpose of enjoying the advantage arising from being so near to it, without being at the same time subjected to the burthen which might devolve upon its actual citizens, and the sole question discussed and decided in that case, was whether the legislature might not, by extending the boundary of the original town, bring that which had thus grown up on its border within its jurisdiction for the purpose of government, taxation and other municipal objects. This power of providing for the government of such an exterior town, was placed upon the same footing as that of establishing or providing for the government of towns in general, which was admitted to include necessarily the power of ascertaining and prescribing the extent of the town, and the just boundaries of the territorial jurisdiction thus to be established. And after showing that there must necessarily be vested in the legislative department a wide range of discretion, not only as to the objects for which a tax, general or local, may be enforced, but also as to the subjects of taxation, and as to the extent of territory within which a local tax shall operate. The power of the judiciary to determine that the legislature has exceeded this discretionary power, is declared to consist solely in the discrimination to be made between what may with reasonable plausibility be called a tax, and for which it may be assumed that the objects of the taxation are regarded by the legislature as forming a just compensation, and that which is palpably not a tax, but is, under the form of a tax, or in some other form the taking of private property for the use of others, or of the public, without compensation. The case must be one, say the court, in which the operation of the power will be, at first blush, pronounced to be the taking of private property without compensation, and in which it is apparent that the burthen is imposed without any view to the interest of the individual in the objects to be

accomplished by it.  And while declaring a disposi-
tion to consider the clause of the constitution which
prohibits the taking of private property for public
use without compensation, as sufficiently comprehen-
sive to protect against flagrant outrage or palpable
wrong, it is said to be too indefinite to afford protec-
tion to every case of seeming hardship  or injustice,
or to authorize a judicial tribunal to enquire into
the minute operation of imposing or authorizing tax-
es, or regulating the boundaries of local jurisdictions,
and to arrest their operation, whenever the court may
find some inequality, and consequent oppression.
And it is said, if the act may rest upon a legitimate
or constitutional basis, it cannot be defeated by the
presumption of unjust motives or objects, nor even
by their actual coexistence with such as are just and
legal.   It is true, the opinion referred to presents, by
way of contrast with the case before the court, and
apparently as an example of the unconstitutional ex-
ercise of legislative power, the case of vacant land,
or of a well improved farm occupied by the owner
and his family alone for agricultural purposes, and
which, without being required for either streets or
houses, or for any other purpose of the town, but
that of increasing its revenue, is brought within its
taxing power by an act extending its limits.   But
this supposed case was not before the court for its
judgment, and what was said with regard to it is not
entitled to the weight of a judicial decision.   Nor is
it to be assumed, that in presenting a case merely for
illustration by way of contrast, every circumstance
and consideration which in  an actual case might
force itself upon the attention, would be duly weigh-
ed or even stated.   And the apparent denial of the
legislative power to authorize a town to tax the land
to a certain distance outside of its limits, must, by
reference to the general principles of the opinion as
applied to the case actually before the court, be con-
fined to a case in which the extension of the limits
and jurisdiction has no other object or motive but to

increase the revenue of the town, without regard to the interest or duty of the individuals to be affected by the new taxation. The question as to the power or propriety of including residents upon lands surrounding the town, and so near to it that they enjoy substantially the same advantages from its business, its improvements, its institutions, and its good government, as the actual citizens, or a portion of them, was rather presented in the case decided than in the case supposed, which evidently contemplated an extension for the mere purpose of including land and other property without regard to population.

It was in this view, and under this principle, that in the case of *The City of Covington vs. Southgate*, 15 B. Monroe, 491, the extension of the limits of Covington so as to iclude the land of Southgate, was regarded as coming within the example stated in *Cheyney vs. Hoozer*, as a case where it is "palpable that persons or property are subjected to a local burthen for the benefit of others, or for purposes in which they have no interest, and to which they are, therefore, not justly bound to contribute." And in that case, the act extending the boundary of Covington, so as to include the land of Southgate, was held not to authorize the levy of a tax upon it as a part of the town.

In the present case it was proved that the actual population had extended itself, not only on the side on which Sharp's property was situated, as shown in his case, but that it had extended in a similar manner on one or two other streets, and in fact that there were residences on all sides of the town, to the number of more than twenty, including that of Sharp, some of which were immediately adjacent to the old boundary, and all within, as we understand it, much less than a quarter of a mile from it, and that Sharp's house was only about twenty-five poles from the old boundary, and not half a mile from the court house, and that it was near enough to enjoy the advantages of schools, churches and business in the town,

1. Where a town is extended by improvement, so as to give those living adjacent to the town boundary all the advantages which the citizens enjoy from the local government of the town, the legislature have constitutionally the power to extend the limits of the town, and subject the owners of the property to a share

the boundary of which was extended apparently not more than about a quarter of a mile on each side, so as to include these neighboring residences, with more or less of the land attached to and occupied together with them.   It also appears that after the extension, eleven houses had been built for residences on the intervening land, and that Sharp himself had laid out and sold a tier of lots, with a street, within the added space, and had also conveyed another lot of ten acres, on which a residence had been erected, before the trial; and that the new boundary presents a regular rectangular figure, except that one of its corners is cut off by the water-course which runs near the town, and which is followed for some distance.

of the burthens of the local government.

We deem it unnecessary to state other more minute facts detailed in the evidence.   And if this case is not directly decided in favor of the constitutionality of the act, and of the tax, by the case of *Cheyney vs. Hoozer* in reference to the same act, we think it comes within the principles on which, according to that case, the legislative power, and the consequent tax, cannot be denied or resisted.   There was such an extension of the town in certain quarters as justified legislative action in extending the boundary; subsequent events have also demonstrated that, with respect to the growth of the town, there was utility in the extension, if not a necessity for it.   And whether the boundary is just where it ought to be, or where necessity required it to be, is not the subject of judicial enquiry or scrutiny.   There may be some inequality, inasmuch as different quantities of land, belonging to different owners, and situated at unequal distances from the centres of business, are brought into the town and subjected to taxation, but there is no such flagrant case as authorizes the conclusion, at first blush, that this taxation is the mere taking of private property for public use.   The persons brought into the town had nearly all the advantages of actual citizens.   We cannot say that they

and their property do not, or will not, derive some advantage from being brought into the town, and becoming thus entitled to its care and protection, and to a portion of its expenditures; and if they may not share these in exactly equal degree with original citizens, or with each other, it may be presumed that their burthens, under the *ad valorem* system of taxation, will bear some proportion to the relative advantage. The real objection is that they do not now, as formerly, enjoy the advantages of the town without its burthens.

2. Whether, upon the existence of a particular state of fact, the legislature is authorized to extend the town limits, is a question of law for the decision of the court rather than of a jury. The propriety of the extension, nor the motive, cannot be submitted to the jury.

The question whether, upon a given state of facts, the legislative act, and the consequent tax, are constitutional, is a purely legal question. And although it depends upon facts which, if controverted, are, in a case like this, to be submitted to a jury, neither the propriety or, in common language, necessity of the extension, nor the motives which produced it, are among the facts which the jury is to decide. They are in truth not facts to be determined by a jury, for this would make the constitutionality of the law to depend on the opinion of the jury as to matters which are at last but matters of opinion, and upon which the legislature has, in passing the act, already expressed its judgment. And that judgment cannot be controlled on the ground of a mere difference of opinion as to the wants or necessities of the town, or upon mere conjecture, or opinion, as to the motives of the extension, but only upon the ground of a flagrant violation of constitutional right, to be demonstrated by the extrinsic facts showing the actual condition of the town with respect to territory, population and locality, and the condition of the added territory with respect to population and in relation to the existing town. These facts, if controverted, are to be found by the jury, but the question of constitutionality arising upon them is a conclusion of law, which, if there be no dispute as to the facts, may be pronounced at once by the court in instructions to the jury.

If this be not so—if the constitutionality of a law of this character is, under the principles of the two cases above referred to, to depend upon what a jury may believe as to the necessity of the extension, or the motives which led to it, we should, while still approving the principles asserted in those cases, greatly doubt the practicability of so applying them as to maintain the just authority of either the legislature or the constitution.

The opinions of the circuit court in giving and refusing instructions, were in accordance with the principles of this opinion, and justified by the evidence.

Wherefore, the judgment for the defendant is affirmed.